UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

PETROLEUM HELICOPTERS, INC.                CIVIL ACTION NO. 6:13-cv-00015

VERSUS                                     JUDGE DOHERTY

APICAL INDUSTRIES, INC.,                   MAGISTRATE JUDGE HANNA
OFFSHORE HELICOPTER
SUPPORT SERVICES, INC., AND
ROLLS ROYCE CORPORATION

## MEMORANDUM  RULING

Currently pending is the motion to remand that was filed by plaintiff Petroleum

Helicopters, Inc. ("PHI").  (Rec. Doc. 18).  The motion is opposed.  Oral argument

was heard on May 1, 2013.  The motion was taken under advisement, and an order

permitting additional briefing was entered.  (Rec. Doc. 48).  The parties complied

with the order and submitted additional briefs.  (Rec. Docs. 50, 51, 52).  Considering

the evidence, the briefs, the arguments of counsel, and the applicable law, and for the

reasons explained below, the motion is denied.

### FACTUAL BACKGROUND

On December 1, 2011, engine failure forced a helicopter owned and operated

by PHI to make an emergency landing in the Gulf of Mexico.  During the emergency

landing, the pilot inflated skid-mounted floats that were designed to keep the helicopter from sinking.  The float system failed, and the helicopter was lost.

Defendant Rolls Royce Corporation allegedly designed, manufactured, and sold the engine.  Defendant Apical Industries, Inc. allegedly designed, manufactured, and sold the float system.  Defendant Offshore Helicopter Support Systems, Inc. ("OHS") allegedly repaired and reworked the float system before the subject event.  In this lawsuit, PHI seeks to recover from all three of the defendants.

## ANALYSIS

This suit was originally filed in the 15th Judicial District Court, Lafayette Parish, Louisiana.  It was removed by the defendants Apical and OHS on the basis of diversity, with the defendants arguing that OHS, which is not diverse, was improperly joined.  (Rec. Doc. 1).  Defendant Rolls Royce consented to the removal.  (Rec. Doc. 2).  The defendants argued, in their removal notice, that OHS was improperly joined because any possibility of recovery by PHI against OHS is precluded by the holding of *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986).  PHI then filed an amended complaint (Rec. Doc. 15), asserting only a claim to which the *East River* doctrine does not apply.  PHI argues that, because it was entitled to amend its complaint under Fed. R. Civ. P. 15(a), only the amended complaint should be considered when evaluating subject-matter jurisdiction, while the defendants argue

that the claim already asserted at the time of removal governs the jurisdictional analysis.

Federal district courts are courts of limited jurisdiction, possessing only the power authorized by the Constitution and by statute.[1]  Accordingly, federal courts have subject-matter jurisdiction only over civil actions presenting a federal question[2] and those in which the amount in controversy exceeds $75,000 and the parties are citizens of different states.[3]  For that reason, a suit is presumed to lie outside a federal court's jurisdiction until the party invoking federal-court jurisdiction establishes otherwise.[4]  Because "the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns."[5]  The removal statute must therefore be strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand and against federal-court jurisdiction.[6]

---

[1]     See, e.g., *Griffin v. Lee*, 621 F.3d 380, 388 (5th Cir. 2010); *Halmekangas v. State Farm Fire and Cas. Co.*, 603 F.3d 290, 292 (5th Cir. 2010); *Howery v. Allstate Ins., Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

[2]     28 U.S.C. § 1331.

[3]     28 U.S.C. § 1332.

[4]     *Howery v. Allstate*, 243 F.3d at 916.

[5]     *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir. 1995).

[6]     *Carpenter v. Wichita Falls*, 44 F.3d at 366; *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

The party invoking subject-matter jurisdiction in federal court has the burden of establishing the court's jurisdiction by a preponderance of the evidence.[7]  When an action is removed from state court, as this suit was, the removing party bears the burden of proving that federal-court jurisdiction exists.[8]  Accordingly, the defendants, as the removing parties, have the burden of establishing that this Court has subject-matter jurisdiction over this action.

To remove a case based on diversity jurisdiction, a defendant must demonstrate "that all of the prerequisites of diversity jurisdiction contained in 28 U.S.C. § 1332 are satisfied."[9]  Thus, the removing defendant must establish that the amount in controversy exceeds $75,000 and the parties are diverse in citizenship.[10]  In this case, the removing defendants contend that these criteria are satisfied when the citizenship of the allegedly improperly joined defendant is disregarded, while the plaintiff argues that complete diversity does not exist because there is no basis for disregarding OHS's citizenship.

---

[7]     *Howery v. Allstate Ins. Co.*, 243 F.3d at 919; *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998).

[8]     *Shearer v. Southwest Service Life Ins. Co.*, 516 F.3d 276, 278 (5th Cir. 2008); *Boone v. Citigroup, Inc.*, 416 F.3d 382, 388 (5th Cir. 2005); *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995).

[9]     *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568, 572 (5th Cir. 2004) (*en banc)*.

[10]     28 U.S.C. § 1332.

## A.   DOES THE AMOUNT IN CONTROVERSY EXCEED THE STATUTORY THRESHOLD?

The amount in controversy is the sum claimed by the plaintiff in his complaint if the claim was apparently made in good faith.[11]  When the complaint does not state a specific amount of damages, the defendant must establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold.[12]  This burden can be satisfied either by demonstrating that the amount in controversy is facially apparent from the plaintiff's pleadings or by setting forth the facts in controversy, with summary-judgment-type evidence, that support a finding of the requisite amount.[13]  Here, PHI alleges that its helicopter was a total loss.  Although the value of the helicopter is not stated in the petition, there is no doubt that its value exceeded $75,000.  Accordingly, the undersigned finds that it is facially apparent that the plaintiff's claims exceed the $75,000 statutory threshold for jurisdiction under 28 U.S.C. § 1332.

---

[11]     *St. Paul Reinsurance v. Greenberg*, 134 F.3d at 1253; *De Aguilar v. Boeing Co.*, 47 F.3d at 1408; *Nat'l Union Fire Ins. Co. of Pittsburgh v. Russell*, 972 F.2d 628, 630 (5th Cir. 1992).

[12]     *Simon v. Wal–Mart Stores*, 193 F.3d 848, 850 (5th Cir. 1999); *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

[13]     *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999); *Allen v. R & H*, 63 F.3d at 1335.

**B.**   __A__RE THE __P__ARTIES __D__IVERSE IN __C__ITIZENSHIP?

The basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by inference.[14]  Therefore, when jurisdiction depends on citizenship, citizenship must be distinctly and affirmatively alleged.[15]  Furthermore, "the burden of establishing jurisdiction rests upon the party seeking to invoke it and cannot be placed upon the adversary who challenges it."[16]  For those reasons, "[t]he burden of pleading diversity of citizenship is upon the party invoking federal jurisdiction, and if jurisdiction is properly challenged, that party also bears the burden of proof."[17]  Once a motion to remand is filed, the burden is on the removing parties to prove that federal jurisdiction exists.[18]

All of the parties to this lawsuit are corporations.  Under 28 U.S.C. § 1332(c)(1), a corporation is deemed to be a citizen of any state in which it is incorporated and any state where it has its principal place of business.  Therefore, a

---

[14]   *Illinois Central Gulf Railroad Co. v. Pargas, Inc*., 706 F.2d 633, 636 (5th Cir. 1983).

[15]   *Getty Oil v. Ins. Co. of North America*, 841 F.2d 1254, 1259 (5th Cir. 1988).

[16]   *Gaitor v. Peninsular & Occidental S. S. Co*., 287 F.2d 252, 253 (5th Cir. 1961).

[17]   *Ray v. Bird and Son and Asset Realization Co*., 519 F.2d 1081, 1082 (5th Cir. 1975).

[18]   *De Aguilar v. Boeing*, 47 F.3d at 1408.

party invoking diversity jurisdiction must allege both the state of incorporation and the principal place of business of each corporate party.[19]

In their removal notice, the defendants reiterated the allegations from the original petition that PHI is a Louisiana corporation with its principal place of business in Louisiana and that defendant Rolls Royce is a Delaware corporation with its principal place of business in Indiana. They alleged that defendant Apical is a California corporation with its principal place of business in California. Although they alleged that defendant OHS is a Louisiana corporation with its principal place of business in Louisiana, making it nondiverse, the defendants argued that OHS was improperly joined.

These allegations were sufficient, at the time of removal, to permit the undersigned to evaluate the citizenship of the parties. If OHS's citizenship is disregarded, as requested by the defendants, the parties are diverse. If OHS's citizenship must be considered, however, diversity is destroyed. Therefore, the undersigned must determine whether OHS was improperly joined.

## C.   WAS OHS IMPROPERLY JOINED?

PHI's challenge to the Court's jurisdiction is based solely upon whether OHS was improperly joined. The removing defendants contend that OHS was improperly

---

[19]        *Illinois Central v. Pargas, Inc.*, 706 F.2d at 637.

joined and, consequently, that its citizenship need not be considered when analyzing whether the parties are diverse in citizenship.  To establish the improper joinder of a non-diverse defendant, the removing defendants must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.[20]  When assessing whether diversity jurisdiction exists, a court must disregard the non-diverse citizenship of an improperly joined defendant.  But a defendant who contends that a non-diverse party is improperly joined has a heavy burden of proof.[21]  The court must ordinarily evaluate all of the factual allegations in the plaintiff's state court pleadings in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff.[22]  If the court then finds that there is no possibility of recovery against the non-diverse party, the non-diverse party has been improperly joined, and its citizenship must be disregarded for jurisdictional purposes. The test to be applied in evaluating improper joinder is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the

---

[20]     *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007).

[21]     *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir. 1983).

[22]     *Green v. Amerada Hess*, 707 F.2d at 205; *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005).

district court to predict that the plaintiff might be able to recover against an in-state defendant."[23]   In this case, two very different claims were presented in the original petition and in PHI's first amended complaint.

In the original petition, PHI expressly asserted a negligence claim against OHS, alleging that OHS improperly repaired the helicopter's float system before the accident occurred.  (Rec. Doc. 1-1 at ¶ 42).  In its first amended complaint, however, PHI deleted the negligence claim against OHS and asserted only a breach of contract claim.  (Rec. Doc. 15 at ¶ 52-58).

The defendants argue that OHS was improperly joined, and its citizenship should therefore be ignored when diversity jurisdiction is evaluated, because there is no possibility that PHI can recover against OHS with regard to the claim asserted in the original petition.  This argument is based on the *East River* doctrine, which holds that a maritime plaintiff may not maintain a tort cause of action against a manufacturer when a defective product malfunctions, injuring only the product itself and causing purely economic loss.  Pursuant to this doctrine, a manufacturer has no duty under either a negligence theory or a strict products liability theory to prevent a product from injuring itself.[24]   That theory has been expanded and applies with

---

[23]     *Smallwood v. Illinois Cent.*, 385 F.3d at 577.

[24]     *East River v. Transamerica Delaval, Inc.*, 476 U.S. at 871.

equal force to contracts for professional services that are rendered in connection with the manufacture or construction of a product, by a party other than the manufacturer.[25] Here, OHS did not manufacture the helicopter's floats, but it did repair or overhaul them, providing a professional service to a product.  Therefore, if PHI's claim against OHS is a maritime claim, and if the damages incurred by PHI were purely economic injuries to the product itself, the *East River* doctrine applies and prevents PHI from recovering from OHS.

This raises two questions:  (a) is PHI's claim against OHS a maritime claim; and (b) can PHI's claimed damages accurately be characterized as purely economic damages to the product itself?

### D.   IS PHI'S CLAIM AGAINST OHS A MARITIME TORT?

After the initial round of briefing, the undersigned identified the question of whether PHI's claim against OHS was a maritime claim as a threshold issue and ordered the parties to brief it.  (Rec. Doc. 29).  The parties complied.  (Rec. Docs. 34, 35, 36, 41, 44, 46).  The defendants argued that the original claim against OHS is a maritime tort that is precluded by the *East River* doctrine.  PHI argued that its original claim against OHS is not a maritime tort and further argued that even if the claim

---

[25]     *Employers Insurance of Wausau v. Suwanee River Spa Lines, Inc.*, 866 F.2d 752, 761 (5th Cir. 1989).

were maritime in nature it was not precluded by the *East River* doctrine because the float system and the helicopter are separate products.

Courts considering whether a plaintiff's claims sound in maritime tort apply the same analysis used to determine admiralty jurisdiction:  the two-part situs and nexus test.[26]  The situs test is satisfied (1) if the alleged tort occurred on navigable waters or (2) if the injury was suffered on land but the alleged tort was caused by a vessel on navigable waters.[27]  The nexus test is satisfied if the accident has a potentially disruptive impact on maritime commerce and the activity that gave rise to the accident had a substantial relationship to traditional maritime activity.[28]  If these criteria are satisfied, PHI's filing of the claim in Louisiana state court without mentioning admiralty jurisdiction does not transform the claim to something other than a maritime claim.

To apply maritime law to an aviation accident, the same two-part analysis is used.  Ferrying passengers to or between offshore oil rigs has been held to be a function traditionally performed by waterborne vessels.[29]  Therefore, when a

---

[26]     *Jerome B. Grubart Inc. v. Great Lakes Dredge and Dock Co.*, 513 U.S. 527, 534 (1995).

[27]     *Grubart v. Great Lakes*, 513 U.S. at 534.

[28]     *Grubart v. Great Lakes*, 513 U.S. at 534.

[29]     *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 218-19 (1986).

helicopter crashes into the Gulf of Mexico while transporting personnel to or between platforms, both parts of the relevant test are satisfied.  As stated in a case presenting facts very similar to those of this one:

> admiralty jurisdiction is appropriately invoked here under traditional principles because the accident occurred on the high seas and in furtherance of an activity bearing a significant relationship to a traditional maritime activity. Accordingly, maritime jurisdiction would exist and substantive maritime law would apply to plaintiff's claim for products liability.[30]

In this case, it is undisputed that PHI's helicopter crashed into the Gulf of Mexico and the defendants presented evidence showing that the incident occurred while the pilot was transporting a single passenger from one offshore platform to another.[31]  Accordingly, the undersigned finds that the claim asserted by PHI against OHS in the original petition is a maritime claim.

## E.   ARE PHI'S DAMAGES PURELY ECONOMIC DAMAGES TO THE PRODUCT ITSELF?

"The *East River* rule applies when the action is for damage to the product itself and not for damage to 'other property.'"[32]  Here, it is undisputed that PHI seeks to

---

[30]     *PHI, Inc. v. Rolls-Royce Corp.*, No. 08-1406, 2010 WL 883794, at *3 (W.D. La. Mar. 9, 2010) (internal punctuation and citations omitted).

[31]     Rec. Doc. 35-1.

[32]     *Petroleum Helicopters, Inc. v. Avco Corp.*, 930 F.2d 389, 392 (5th Cir. 1991).

-12-

recover only economic damages in this lawsuit, but the defendants argue that the helicopter is "the product" that was damaged in the incident, while PHI argues that two separate products were injured:  the helicopter and the float system.  Therefore, the issue of whether PHI has a reasonable possibility of recovery against OHS rests on whether the float system should properly be characterized as a component part of the helicopter or as "other property."

This is not a factual issue.  Instead, it is a legal question.[33]  "[T]he phrase 'other property' is construed by looking to the nature of the contract between the parties, and such a determination hence rests upon a contractual interpretation, i.e., a legal analysis, and not upon a separate factual determination."[34]  In determining whether something is an "other product," the object of the parties' contract or bargain must be examined.[35]

In this case, the evidence (Rec. Doc. 36-1) establishes that PHI purchased the subject helicopter from Bell without a float system, and that PHI separately purchased the float system from its manufacturer, Apical.  However, the evidence also shows that Bell installed the float system on the helicopter before the helicopter was

---

[33]    *Petroleum Helicopters, Inc. v. Avco Corp.*, 930 F.2d at 393.

[34]    *Petroleum Helicopters, Inc. v. Avco Corp.*, 930 F.2d at 393 n. 9 (internal citations omitted).

[35]    *Shipco 2295, Inc. v. Avondale Shipyards, Inc.*, 825 F.2d 925, 928 (5th Cir. 1987).

delivered to PHI.  No evidence was presented showing that the float system was added to the helicopter after the helicopter was delivered to PHI.  Therefore, even though there were two separate purchases, PHI's bargain with Bell contemplated that the float system would be installed before the helicopter could be considered to be a completed product.  Any number of other component parts of the helicopter were also likely manufactured by companies other than Bell but assembled by Bell for delivery to PHI as a single, completed product.  Therefore, although there was a purchase from Apical and a purchase from Bell, the undersigned finds that these separate purchases resulted in a single, integrated product – the helicopter.

In a case presenting similar facts,[36] the float system on a PHI helicopter failed to operate properly following a crash into the Gulf of Mexico and the Fifth Circuit held that the helicopter was a single product.  There, the float system was "fitted, as original equipment"[37] onto a helicopter at the time the helicopter was purchased.  The fact that, in this case, the float system was "optional equipment" on the helicopter rather than "original equipment" is immaterial.  What is important is that PHI's bargain with Bell included the installation of the float system as a component part of the finished helicopter.

---

[36]     *Petroleum Helicopters, Inc. v. Avco Corp.*, 930 F.2d 389 (5th Cir. 1991).

[37]     *Petroleum Helicopters, Inc. v. Avco Corp.*, 930 F.2d at 390.

Having found that the float system is not "other property," the undersigned further finds that the *East River* doctrine would preclude the possibility of PHI recovering against OHS if the negligence claim asserted in PHI's original petition were used in evaluating the Court's subject-matter jurisdiction, leading to the conclusion that OHS was improperly joined in the lawsuit.  But this conclusion is reached only if the negligence claim asserted in PHI's original petition is considered, since the *East River* doctrine does not preclude the breach of contract claim that was asserted by PHI against OHS in the amended complaint.

**F.    CAN THE DIVERSITY OF THE PARTIES BE EVALUATED BASED ON THE CLAIM ASSERTED IN THE AMENDED COMPLAINT?**

When a lawsuit is removed from state court, the general rule is that subject-matter jurisdiction is evaluated at the time of removal and that post-removal events, except for the addition of a nondiverse party, do not alter the evaluation.  "The existence of subject matter jurisdiction is determined at the time of removal."[38] Consistently, the jurisprudence is clear that most events that occur after removal will not defeat jurisdiction.[39]  When subject-matter jurisdiction is predicated upon a federal question, jurisdiction is evaluated "by looking at the complaint at the time the

---

[38]    *In re Bissonnet Investments LLC*, 320 F.3d 520, 525 (5th Cir. 2003).

[39]    *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1181 (5th Cir. 1987).

-15-

petition for removal is filed. . . . [W]hen there is a subsequent narrowing of the issues such that the federal claims are eliminated and only pendent state claims remain, federal jurisdiction is not extinguished."[40]  Even a plaintiff's amending his complaint to omit all federal-law claims will not defeat a federal court's jurisdiction over a properly removed case.[41]  Instead, the question then becomes whether the federal court should retain the pendant claims or remand the action to state court, and that question is left to the court's discretion.  "A federal district court has discretion to remand a properly removed case to state court when all federal-law claims have been eliminated and only pendent state-law claims remain."[42]

When subject-matter jurisdiction is predicated upon diversity of citizenship, the same general rule applies.  To assess whether jurisdiction is appropriate, a court must consider the claims in the state-court petition as they existed at the time of removal.[43]  Although the Court must remand the case to state court if at any time

---

[40]      *Brown v. Southwestern Bell Telephone Co*., 901 F.2d 1250, 1254 (5th Cir. 1990).

[41]      *Hook v. Morrison Milling Co*., 38 F.3d 776, 780 (5th Cir. 1994); *Jones v. Houston Independent School District*, 979 F.2d 1004, 1007 (5th Cir. 1992).

[42]      *Jones v. Roadway Express, Inc*., 936 F.2d 789, 792 (5th Cir. 1991).  See also, *Brown v. Southwestern Bell*, 901 F.2d at 1254.

[43]      *Manguno v. Prudential Prop. & Cas. Ins. Co*., 276 F.3d 720, 723 (5th Cir. 2002), citing *Cavallini v. State Farm Mutual Auto Ins.*, 44 F.3d 256, 264 (5th Cir. 1995); *In re Carter*, 618 F.2d 1093, 1101 (5th Cir. 1980).

before final judgment it appears that it lacks subject-matter jurisdiction,[44] the United States Supreme Court has "consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events."[45] Thus, if there is jurisdiction at the time of removal, there should not come a point in the litigation when the court lacks subject-matter jurisdiction.  An exception has been carved out of this rule, however, for situations when a nondiverse defendant is added as a party to the suit after the action has been removed.  In that situation, diversity is destroyed and the case must be remanded.[46]  That is not the situation presented here.

Here, PHI asserted a negligence claim against OHS in its original petition then amended the complaint to delete the negligence claim and assert a breach of contract claim against OHS.  The negligence claim is barred by the *East River* doctrine but the breach of contract claim is not.  Therefore, if diversity jurisdiction is evaluated in light of the original petition, OHS was improperly joined and the fact that it is nondiverse must be ignored, but if diversity jurisdiction is evaluated in light of the amended complaint, OHS was not improperly joined and its nondiverse citizenship requires remand of this action to state court.

---

[44]     28 U.S.C. § 1447(c).

[45]     *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991).

[46]     *Doleac v. Michalson*, 264 F.3d 470, 477 (5th Cir. 2001); *Hensgens v. Deere & Co.*, 833 F.2d at 1181.

The defendants argue that this issue is controlled by the holding of *Cavallini v. State Farm Mutual Auto Ins.*, 44 F.3d 256 (5th Cir. 1995), while PHI argues that the holding of *LC Farms, Inc. v. McGuffee*, No. 2:12-cv-165-SA-JMV, 2012 WL 5879433 (N.D. Miss. Nov. 21, 2012), should be followed. The undersigned finds that he is constrained to follow *Cavallini*. Not only is *Cavallini* a decision by the Fifth Circuit rather than from a district court, it also sets forth a valid and logical basis for its holding that the undersigned finds both persuasive and applicable to this case.

PHI strenuously argues that the fact that it was permitted to amend its complaint of right under Fed. R. Civ. P. 15(a) distinguishes this case from others in which courts have held that jurisdiction is evaluated solely at the time of removal. The undersigned finds, however, that PHI's argument lacks merit. The fact that a party is statutorily permitted to amend its complaint has no bearing on whether a pre-amendment removal was proper. As the court noted in *Cavallini*, "a complaint amended post-removal cannot divest a federal court of jurisdiction."[47] Instead, removal jurisdiction is to be determined on the basis of the claims asserted in the state court complaint as it existed at the time of removal.[48] "Without such a rule, disposition of the issue would never be final, but would instead have to be revisited

---

[47]     *Cavallini v. State Farm Mutual Auto Ins.*, 44 F.3d at 264.

[48]     *Cavallini v. State Farm Mutual Auto Ins.*, 44 F.3d at 264.

every time the plaintiff sought to amend the complaint to assert a new cause of action against the nondiverse defendant, all at considerable expense and delay to the parties and the state and federal courts involved."[49]  In *Cavallini*, the plaintiffs proposed to amend their complaint not to clarify the jurisdictional facts that existed at the time of removal but to "amend away the basis for federal jurisdiction."[50]  That is exactly what is happening in this case.  The defendants responded to PHI's original petition by removing the case, and PHI filed an amended complaint that deleted the original claim against OHS and added a totally new one.  As in *Cavallini*, PHI is attempting to amend away the basis for federal jurisdiction.

In *DTND Sierra Investments, LLC v. Bank of New York Mellon Trust Co., N.A.*, No. SA-12-CV-1014-XR, 2013 WL 432923, at *5 (W.D. Tex. Feb. 4, 2013), the issue was framed as follows:  "The question is thus whether the filing of the amended complaint as of right to include claims against a pre-existing, non-diverse defendant is sufficient to defeat jurisdiction."  That is the same issue presented here.  In *DTND*, the court rejected the holding of *LC Farms* and relied upon the reasoning of *Cavallini*, holding that the defendant was improperly joined at the time of removal and that the new allegations in the amended complaint could not be considered in

---

[49]     *Cavallini v. State Farm Mutual Auto Ins.*, 44 F.3d at 264.

[50]     *Cavallini v. State Farm Mutual Auto Ins.*, 44 F.3d at 265.

-19-

connection with the motion to remand.  "Because Defendants. . . were improperly joined at the time of removal, their citizenship is disregarded for determining whether removal was proper.  Accordingly, this court had diversity jurisdiction at the time of removal and Plaintiff's post-removal amendments to the complaint with regard to Defendant. . . fail to destroy that jurisdiction."[51]  The undersigned agrees that "[i]t is a fundamental principle of law that whether subject matter jurisdiction exists is a question answered by looking to the complaint as it existed at the time the petition for removal was filed."[52]   Accordingly, the undersigned finds that PHI's amended complaint cannot be considered when determining whether the parties are diverse in citizenship, whether OHS was improperly joined, and whether this court has subject-matter jurisdiction over the dispute presented in this lawsuit.

More particularly, the undersigned rejects two other arguments made by PHI. First, it is not apparent from the allegations of the original complaint that PHI was asserting a breach of contract claim against OHS.  There is no allegation that there was a contract between them, and there is no allegation that a call in warranty or under the terms of a contract is being made.  The claim asserted there is solely a claim in negligence, which is barred by the *East River* doctrine.

---

[51]   *DTND Sierra v. Bank of New York*, 2013 WL 432923, at *6.

[52]   *In re Carter*, 618 F.2d at 1101.

Second, even though PHI's amended complaint wholly replaced the original petition, the undersigned finds that only the original petition had been filed when the case was removed.  Therefore, even though the only claim that currently exists to be litigated is the breach of contract claim, the original petition is the one that must be examined in order to determine whether – at the time of removal – this court had jurisdiction.  For jurisdictional purposes, the amendment cannot erase that which had already been filed before the defendants removed the action.  At that time, PHI was diverse in citizenship from Apical and Rolls Royce and there was no possibility that PHI could recover from OHS.  Therefore, at the time of removal and with regard to the petition as originally filed, this court had subject-matter jurisdiction.  PHI's subsequent amendment of its claim against OHS cannot divest the court of its jurisdiction.

## CONCLUSION

The defendants removed this action from state court, contending that the amount in controversy exceeds the jurisdictional threshold, that the plaintiff is diverse in citizenship from defendants Apical and Rolls Royce, that the plaintiff is not diverse in citizenship from defendant OHS, and that the citizenship of OHS must be disregarded because OHS was improperly joined as a defendant in the suit.  PHI sought to remand the action, arguing that there is a possibility that PHI can recover

from OHS with regard to the claim set forth in its amended complaint, and therefore arguing that OHS was not improperly joined.  The defendants satisfied their burden of proving that the parties are diverse in citizenship and that OHS was improperly joined.  The claim asserted against OHS in PHI's original petition is a maritime tort claim, sounding in negligence, for which PHI seeks to recover economic damages. The defendants proved that, as a matter of law, the helicopter and its float system are a single product.  Accordingly, the *East River* doctrine precludes PHI from recovering against OHS on the negligence claim.  Consequently, the defendants proved that this Court has subject-matter jurisdiction over this action, and PHI's motion for remand (Rec. Doc. 18) is DENIED.

Signed at Lafayette, Louisiana, this 23rd day of May, 2013.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE