UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

PHI, INC.                                    CIVIL ACTION NO. 6:13-cv-00015

VERSUS                                       JUDGE DOHERTY

APICAL INDUSTRIES, INC., ET AL.     MAGISTRATE JUDGE HANNA

## REPORT  AND  RECOMMENDATION

Currently pending before the Court is Rolls-Royce Corporation's renewed
motion to sever the plaintiff's claim against it and to transfer that claim to the United
States District Court for the Southern District of Indiana.  (Rec. Doc. 106).  The
motion was referred to the undersigned for review, report, and recommendation in
accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this
Court.  (Rec. Doc. 108).  The motion is opposed (Rec. Docs. 114, 115), and oral
argument was heard on February 21, 2014.   For the following reasons, the
undersigned recommends that the motion be denied.

### FACTUAL AND PROCEDURAL BACKGROUND

On December 1, 2011, engine failure – more particularly, the alleged failure
of the engine's #2 bearing – allegedly forced a helicopter owned and operated by PHI
to make an emergency landing in the Gulf of Mexico.  During the emergency landing,

the pilot inflated skid-mounted floats that were designed to keep the helicopter from sinking.  The float system failed, and the helicopter was lost.

Defendant Rolls-Royce Corporation allegedly designed, manufactured, and sold the engine that was in PHI's helicopter when it crashed.  The engine was manufactured in August 1999, then shipped to Bell Helicopter in Canada for installation in the subject helicopter that Bell sold to PHI.  The #2 bearing in the engine at the time of the crash allegedly was a replacement part, which was purchased from Rolls-Royce's distributor Aviall Services, Inc., shipped to PHI, and installed by PHI in the engine in November 2011.  Defendant Apical Industries, Inc. allegedly designed, manufactured, and sold the float system.  Defendant Offshore Helicopter Support Systems, Inc. allegedly repaired and reworked the float system before the subject event.  In this lawsuit, PHI seeks to recover from all three of the defendants.

Rolls-Royce provides a written "Rolls-Royce Model 250 Spare Module/Part Limited Warranty" with each spare part, including the #2 bearing.[1]  The limited warranty states, in Paragraph 8(g), that it is to be construed only in accordance with the laws of the State of Indiana, without reference to Indiana's choice of law rules. The limited warranty also states, in Paragraph 8(h), that "[a]ny controversy or claim arising out of or relating to this Limited Warranty or breach thereof shall be litigated

---

[1]     A copy of the limited warranty is found in the record at Rec. Doc. 106-5.

only in the Circuit or Superior Courts of Marion County, Indiana or the United States District Court for the Southern District of Indiana, Indianapolis Division." (Rec. Doc. 106-5 at 3).

This lawsuit was originally filed in Louisiana state court. (Rec. Doc. 1-1)  It was removed to this venue on the basis of diversity by defendants Apical and Offshore (Rec. Doc. 1), with the consent of Rolls-Royce (Rec. Doc. 2).   The defendants alleged in their removal notice that Offshore was improperly joined as a defendant in the action because PHI and Offshore are both Louisiana corporations and, consequently, are not diverse in citizenship.  Offshore then filed a Rule 12(b)(6) motion to dismiss, alleging that the plaintiff's claims against it were barred by the East River Doctrine.  (Rec. Doc. 11).  PHI amended its complaint to remove the negligence claim originally asserted against Offshore and to replace the negligence claim with a breach of contract claim.  (Rec. Doc. 15).  PHI then moved for remand on the basis that the parties were not completely diverse.  (Rec. Doc. 18).  Following extensive briefing, the court determined that PHI could not recover from Offshore on the negligence claim but that the court had subject-matter jurisdiction over this action at the time of removal and post-removal events had not deprived the court of subject-matter jurisdiction. (Rec. Doc. 53).  The motion to dismiss (Rec. Doc. 11) was denied as moot (Rec. Doc. 47), and the motion to remand was denied (Rec. Doc. 53).

Rolls-Royce then answered the amended complaint and asserted as a defense that venue is improper in this district due to the existence of an allegedly valid and enforceable forum-selection clause set forth in the limited warranty. (Rec. Doc. 54). Rolls-Royce then filed a motion to dismiss and/or transfer this action from the Western District of Louisiana to the Southern District of Indiana, Indianapolis Division (Rec. Doc. 62), based on the forum-selection clause. The other parties opposed Rolls-Royce's motion. (Rec. Docs. 71, 72). After briefing was completed, the District Court held a status conference and decided to defer consideration of the motion until after the United States Supreme Court had issued its decision in the case of *Atlantic Marine Construction Co., Inc. United States District Court for the Western District of Texas*. (Rec. Doc. 73, 79). The District Court denied the motion as premature (Rec. Doc. 79) then, after the Supreme Court rendered its decision,[2] Rolls-Royce renewed its motion to transfer (Rec. Doc. 106). The renewed motion must now be decided.

## ANALYSIS

Rolls-Royce seeks, under Fed. R. Civ. P. 21, to sever the plaintiff's claim against it from the plaintiff's claims against the other defendants and to transfer the

---

[2]      *Atlantic Marine Construction Co., Inc. v. United States District Court for the Western District of Texas*, ___ U.S. ___, 134 S.Ct. 568 (2013).

severed claim against Rolls-Royce to the federal court in Indianapolis, Indiana for adjudication.  When a claim is severed under Rule 21, two separate actions result, and a district court may transfer one action while retaining jurisdiction over the other.[3] That is the result sought by Rolls-Royce in its motion.  Indeed, Rolls-Royce argues that transfer to Indiana is not only proper but is required by the Supreme Court's decision in *Atlantic Marine*.  (Rec. Doc. 106-1 at 6).  The other parties argue that *Atlantic Marine* does not govern this case, that severance of the claim against Rolls-Royce is not appropriate, and that the motion to transfer should be denied.

## A.   IS THE FORUM SELECTION CLAUSE ENFORCEABLE?

Rolls-Royce's position is based on the existence of the forum-selection clause in the limited warranty.  Therefore, the logical starting point for analyzing the issues raised in the parties' briefs is whether that clause is enforceable.  The enforceability of a forum-selection clause is a question of law.[4]  When an action is pending in federal court and subject-matter jurisdiction is based on diversity, as in this case, federal law is applied to determine whether a forum-selection clause is enforceable.[5]

---

[3]     *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1519 (5th Cir. 1991).

[4]     *Haynsworth v. The Corporation*, 121 F.3d 956, 961 (5th Cir. 1997).

[5]     *Haynsworth v. The Corporation*, 121 F.3d at 962.

Under federal law, forum-selection clauses are generally considered to be *prima facie* valid and should be enforced unless it would be unreasonable under the circumstances to do so.[6]  The term "unreasonable" is equated in the jurisprudence with the terms "unfair" and "unjust."[7]  There is a "strong presumption in favor of enforcement of forum selection clauses."[8]  The presumption of enforceability applies to negotiated forum-selection clauses and also to those set forth in form contracts.[9]  The burden is on the party resisting enforcement to demonstrate that enforcement would be unreasonable.[10]  In fact, "[t]he party resisting enforcement. . . bears a 'heavy burden of proof.'"[11]

---

[6]     *In re Spillman Development Group, Ltd.*, 710 F.3d 299, 306 (5th Cir. 2013), citing *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972).

[7]     *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. at 15, 18; *Calix-Chacon v. Global Intern. Marine, Inc.*, 493 F.3d 507, 511 (5th Cir. 2007) ("The Supreme Court reversed and held that in maritime actions forum selection clauses are to be enforced unless the forum selection clause is fundamentally unfair and therefore unreasonable.")

[8]     *Calix-Chacon v. Global Intern. Marine, Inc.*, 493 F.3d at 513.

[9]     *Kevlin Services, Inc. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir. 1995).  See, also, *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 593 (1991), which enforced a forum-selection clause contained in non-negotiated, preprinted form contract.

[10]    *In re Spillman Development Group, Ltd.*, 710 F.3d at 306.

[11]    *Haynsworth v. The Corporation*, 121 F.3d at 963 (quoting *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. at 17).  See, also, *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 441 (5th Cir. 2008).

There are four bases for concluding that a forum-selection clause is unreasonable:  (1) if the incorporation of the forum-selection clause into the agreement was the product of fraud or overreaching; (2) if the party seeking to escape enforcement will, as a practical matter, be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) if the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) if enforcement of the forum-selection clause would contravene a strong public policy of the forum state.[12]  Although not raised by anyone in brief, at oral argument, counsel for PHI argued only that the forum-selection clause in Rolls-Royce's limited warranty should not be enforced since it contravenes Louisiana's public policy. This Court also has reservations about the second basis to conclude the forum-selection clause is unreasonable as set forth below.

## B.  THE ENTIRE ACTION CANNOT BE TRANSFERRED TO INDIANA

Rolls-Royce argues that the Supreme Court's recent decision in *Atlantic Marine Construction Co., Inc. v. United States District Court for the Western District of Texas*, ___ U.S. ___, 134 S.Ct. 568 (2013), mandates an order severing the plaintiff's claim against Rolls-Royce and transferring that claim to Indiana.  This is

---

[12]     *Calix-Chacon v. Global Intern. Marine, Inc.*, 493 F.3d at 511; *Haynsworth v. The Corporation*, 121 F.3d at 963; *Carnival Cruise Lines v. Shute*, 499 U.S. at 595; *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. at 10.

a venue argument.  Therefore, the logical starting point for analysis of Rolls-Royce's motion to transfer is with the basis for venue in the Western District of Louisiana and the statutes that address a transfer of venue.

Under the general venue statute, a civil action may be brought in a judicial district in which any defendant resides if all of the defendants are residents of the state in which the district is located.  18 U.S.C. § 1391(b)(1).  In this case, PHI and Offshore are Louisiana corporations with their principal places of business in Louisiana but Apical is a California corporation with its principal place of business in California, and Rolls-Royce is a Delaware corporation with its principal place of business in Indiana.  (Rec. Doc. 1 at 2-3).  The defendants do not all reside in Louisiana; therefore, this rule does not apply.

Alternatively, a civil action may be brought in a judicial district in which a substantial part of the events giving rise to the claim occurred.  18 U.S.C. § 1391(b)(2).  The aircraft ditched in East Cameron Block 278 of the Gulf of Mexico which is located on the Outer Continental Shelf adjacent to the Western District for the State of Louisiana.[13] (Rec. Doc. 114-2, p. 3)

---

[13]    Since Offshore is not subject to personal jurisdiction in Indiana, whether under the applicable provision of the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. §1349, or the general maritime law, venue would be proper  in the Western District of Louisiana but would not be proper in Indiana. *Time, Inc. v. Manning* 366 F.2d 690, 698 (5ᵗʰ Cir. 1966) ( Corporation may "be found" where it is doing business); Accord *Devon Energy Production Co. v. Global Santa Fe* 2007 WL 1341451 *3-4 (S.D. Tx. 2007);  *In re McDonnell-Douglas Corp.,* 647 F.2d 515, 516 (5ᵗʰ Cir.

If, as in this case, neither of the first two venue choices are applicable, a civil action may be brought in any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to the action.   18 U.S.C. § 1391(b)(3). Offshore's headquarters is in this district and none of the defendants have objected to this court's asserting personal jurisdiction over them.   Apical and Offshore removed the action to this forum and Rolls-Royce consented to the removal.  (Rec. Docs. 1, 1-1 at 1).  Accordingly, venue in this forum is proper.

Venue would not be proper as to all defendants in the Southern District of Indiana, the alternative venue to which Rolls-Royce seeks to transfer PHI's claim against it, because, according to Offshore, the Southern District of Indiana lacks personal jurisdiction over Offshore. (Rec. Doc. 115 at 4).  Although that issue has not been placed before this Court for decision, the undersigned assumes that PHI could not have filed suit against all three defendants in the Southern District of Indiana when it instituted this litigation; it could only have brought the suit in Louisiana state court (as it did) or in this forum (to which the case was removed).

Furthermore, the entire action could not be transferred to Indiana.  There are two transfer statutes, but neither of them would permit transfer of this action.

---

1981).

Under 28 U.S.C. § 1404(a), a district court may, for the convenience of the parties and witnesses and in the interest of justice, transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.  Assuming that the Southern District of Indiana would have no personal jurisdiction over Offshore, as argued by Offshore, this action could not have been brought there.  Furthermore, PHI, Offshore, and Apical oppose Rolls-Royce's efforts to move the action to Indiana, indicating their unwillingness to consent to a transfer.  Therefore, neither basis for transfer of the action under Section 1404(a) applies, and this statute does not authorize transfer of this action to Indiana.

Under 28 U.S.C. § 1406(a), an action that was brought in "the wrong division or district" can be transferred to another district or division "in which it could have been brought."   Rolls-Royce has not demonstrated that the Western District of Louisiana is a wrong venue.  To the contrary, this is the only federal-court venue in which this suit could have been brought, as explained above.  Furthermore, as also noted above, the suit could not have originated in Indiana due to the presumed lack of personal jurisdiction over Offshore.  Therefore, this statute does not permit transfer of the action.

-10-

Since the entire action cannot be transferred to Indiana under either transfer of venue statute, Rolls-Royce is seeking severance PHI's claim against it from the other claims asserted in the lawsuit and the transfer of only that claim to Indiana.

## C.   SHOULD THE PLAINTIFF'S CLAIM AGAINST ROLLS-ROYCE BE SEVERED?

### 1.   THE STANDARD FOR ANALYZING A RULE 21 MOTION TO SEVER

Rolls-Royce seeks to sever the plaintiff's claim against it from the plaintiff's claims against the other defendants under Fed. R. Civ. P. 21, which gives a court the power to "sever any claim against a party."  "Severance under Rule 21 creates two separate actions or suits where previously there was but one.  Where a single claim is severed out of a suit, it proceeds as a discrete, independent action, and a court may render a final, appealable judgment in either one of the resulting two actions notwithstanding the continued existence of unresolved claims in the other."[14]

Claims may also be severed under Fed. R. Civ. P. 42(b), which states that "the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims or third-party claims" for "convenience, to avoid prejudice, or to expedite and economize."  But a Rule 42(b) order of separate trials does not result in separate cases; it simply leads to two or more separate inquiries in the context of a

---

[14]        *United States v. O'Neil*, 709 F.2d 361, 368 (5th Cir. 1983).  See, also, *Vander Zee v. Reno*, 73 F.3d 1365, 1368 n. 5 (5th Cir. 1996).

single case.[15]   Therefore, a Rule 42(b) severance would not accomplish the transfer sought by Rolls-Royce, and Rolls-Royce does not seek severance under Rule 42.

Whether to sever a claim under Rule 21 is a question left to the sound discretion of the trial court.[16]   In fact, the trial court has broad discretion to resolve that issue.[17]   The court has authority to sever a claim if the requirements of Rule 20(a) for permissive joinder are satisfied[18] and to sever a claim under Rule 42(b) in the furtherance of convenience or economy or to prevent prejudice.[19]   Numerous district courts in the Fifth Circuit have held that the following factors should be considered when deciding whether a claim should be severed under Rule 21:  (1) whether the claims arose out of the same transaction or occurrence, (2) whether the claims present common questions of law or fact, (3) whether settlement or judicial economy would

---

[15]        See *United States v. O'Neil*, 709 F.2d at 368.

[16]        *Applewhite v. Reichhold Chems.*, 67 F.3d 571, 574 (5th Cir. 1995); *United States v. O'Neil*, 709 F.2d at 367.

[17]        *Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000); *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994).

[18]        *United States v. O'Neil*, 709 F.2d 361, 369 (5th Cir. 1983); *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010).

[19]        *Applewhite v. Reichhold Chems.*, 67 F.3d 571, 574 (5th Cir. 1995).

be promoted, (4) whether prejudice would be averted by severance, and (5) whether different witnesses and documentary proof are required.[20]

The United States Supreme Court has instructed lower courts to employ a liberal approach to permissive joinder of claims and parties in the interest of judicial economy. "Under the Rules, the impulse is towards entertaining the broadest possible scope of action consistent with fairness of the parties; joinder of claims, parties[,] and remedies is strongly encouraged."[21]

## 2.   SEVERANCE IS NOT WARRANTED IN THIS CASE

Having carefully considered each of the five relevant factors, the undersigned finds that severance of the plaintiff's claim against Rolls-Royce is not warranted and therefore recommends that PHI's claim against Rolls-Royce not be severed from the other claims asserted in this lawsuit.

The first factor to be considered is whether the claims arose out of the same transaction or occurrence.  All of PHI's claim arose out of the same helicopter crash,

---

[20]    See, e.g., *Paragon Office Services, LLC v. United Healthcare Ins. Co., Inc.*, No. 3:11-cv-2205-D, 2012 WL 4442368, at *1 (N.D. Tex., Sept. 26, 2012); *Aspen Technology, Inc. v. Kunt*, No. 4:10-cv-1127, 2011 WL 86556, at *2 (S.D. Tex., Jan. 10, 2011); *In re Southern Scrap Material Co., L.L.C.*, 713 F.Supp.2d 568, 588 (E.D. La. 2010); *Butcher v. Allstate Ins. Co.*, No. 1:06cv423-KS-MTP, 2008 WL 5101339, at *2 (S.D. Miss., Nov. 26, 2008); *Goodyear v. Dauterive Hosp. of New Iberia, Louisiana*, No. 07-249, 2007 WL 2066855, at *2 (W.D. La., July 13, 2007); *Amie v. City of Jennings, Louisiana*, No. 2:03CV2011, 2005 WL 3007009, at *2 (W.D. La., Nov. 8, 2005).

[21]    *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).  See, also, *Wright v. Sears Roebuck & Co.*, No. 09-1498, 2010 WL 330216, at *1 (W.D. La., Jan. 20, 2010).

and each of the claims seeks to hold a defendant liable for the loss of the helicopter. Therefore, the claims all arose out of the same occurrence.  This factor weighs against severance.

The second factor is whether the claims present common questions of law or fact.  The same factual issues are germane to all of PHI's claims, particularly with regard to which of the three defendants is liable for the loss of PHI's helicopter and in what proportion.  If the claim against Rolls-Royce was severed, then a court in Louisiana and a court in Indiana would both be presented with evidence concerning the purchase of the helicopter, the replacement of the #2 bearing, the purchase of the flotation system, the maintenance and repair of the flotation system, the occurrence of the crash itself, and the investigation of the crash.  As PHI argued in its opposition brief, "[t]his case involves multiple parties that are responsible for a single, indivisible loss:  PHI's helicopter." (Rec. Doc. 114 at 15).  If severed, both cases would require the same or similar testimony from numerous fact witnesses.  Thus, common questions of fact apply to all of PHI's claims.  This militates against severance.

The third factor focuses on whether severance would promote settlement or judicial economy.  In this case, neither goal would be promoted if the claim against Rolls-Royce was severed and then transferred to Indiana.  The undersigned agrees

-14-

with PHI's argument that "[s]plitting this case would make it more difficult for the parties to apportion liability and contributions to potential settlements." (Rec. Doc. 114 at 15).   Settlement efforts would be negatively impacted because different scheduling orders with different time frames would be in place, preventing the two lawsuits from having the same procedural posture at the same time.   Similarly, settlement efforts would be thwarted by the possibility of achieving different results in different courts if the claims were not settled prior to trial.  This is so because each of the lawsuits resulting from severance would have different empty chair defendants, creating the possibility of vastly different apportionments of responsibility in the two suits.  Judicial economy would also be imperiled by severance since the same factual issues regarding the crash and its investigation would have to be litigated twice in two different courtrooms in front of two different fact-finders.  As one court noted in denying severance of intertwined claims:   "[l]itigating the case in one court will enable one court with a direct understanding of the relationship between the. . . claims to superintend discovery, decide pretrial motions, and schedule each track for final disposition.  The parties will be at less risk of receiving from two courts rulings that are inconsistent, in tension, or even conflicting.  It would be less efficient, if not inefficient, to split the case into two parallel litigation tracks before two courts."[22]

---

[22]        *Paragon Office Services, LLC v. UnitedHealthcare Ins. Co., Inc.*, 2012 WL at *3.

Additionally, duplicative testimony from numerous fact witnesses would be required in each forum.  As noted in evaluating this factor in another case, "[t]he same witnesses will be required to testify at each of the trials.  Separate trials would cause undue delay, additional expenses to the parties, and repetition of testimony."[23]  Such a result is not efficient.  Therefore, this factor weighs heavily against severance.

The fourth consideration is whether prejudice would be averted by severance. The undersigned finds that, to the contrary, the plaintiff would be prejudiced if its claim against Rolls-Royce was severed since "granting a severance would promote prejudice by forcing dual litigation and the accompanying risk of inconsistent or conflicting rulings,"[24] as explained above.  Furthermore, "severing the claims. . . could prejudice the Defendants by making it more likely that Plaintiff will obtain double recovery for his injuries rather than having a jury consider the injuries according to the totality of the circumstances."[25]  Apical and Offshore – and Rolls-Royce, as well – would be prejudiced because they would be required to defend claims without all of the potentially liable parties being joined in the same suit.  This factor weighs against severance.

---

[23]     *Amie v. City of Jennings, La.*, 2005 WL at *2.

[24]     *Paragon Office Services, LLC v. UnitedHealthcare Ins. Co., Inc.*, 2012 WL at *3.

[25]     *Williams v. Triple C Enterprise Inc. of Louisiana*, No. 09-7375, 2011 WL 6819012, at *6 (E.D. La., Dec. 28, 2011).

Finally, the court must consider whether different witnesses and documentary proof would be required if the claim was severed. As noted previously, much of the same witness testimony and documentary proof will be required in both forums if the claim against Rolls-Royce is severed and tried separately. Evidence concerning the purchase, maintenance, and repair of the helicopter and its parts, including but not limited to the #2 bearing and the flotation system, will be required in both trials, as will evidence concerning the crash itself and the investigation into why the crash occurred. This factor, therefore, weighs against severance.

In summary, all of the relevant factors weigh in favor of maintaining this lawsuit in its current posture and against severance of PHI's claim against Rolls-Royce. The undersigned therefore recommends that Rolls-Royce's motion to sever be denied.

### 3. BECAUSE THE CLAIM SHOULD NOT BE SEVERED, THERE IS NO BASIS FOR A TRANSFER.

As noted above, severance of a claim under Rule 21 creates two separate lawsuits, one of which can then be transferred to another venue. Absent severance of PHI's claim against Rolls-Royce, there is no basis on which that claim might be transferred to another forum. Having concluded and recommended that the claim should not be severed, any further discussion of Rolls-Royce's motion to transfer

could be pretermitted.  Rolls-Royce argues, however, that the Supreme Court's recent decision in the *Atlantic Marine* case requires severance and transfer of PHI's claim against it.   Therefore, out of an abundance of caution and in the interest of completeness, the parties' arguments for and against transfer will be addressed.

### D.   DOES *ATLANTIC MARINE* MANDATE TRANSFER OF THIS ACTION?

In support of its motion to transfer, Rolls-Royce relies upon the *Atlantic Marine* decision.  But the undersigned finds that the facts presented in *Atlantic Marine* are significantly different from those of this case; consequently, the undersigned also finds that *Atlantic Marine* does not control the issue of whether the claim against Rolls-Royce should be severed from the other claims asserted in this lawsuit and then transferred to Indiana.

As noted previously, 28 U.S.C. § 1406(a) permits transfer of venue when the suit was filed in "the wrong division or district."  Similarly, Fed. R. Civ. P. 12(b)(3) states that a party may move to dismiss a case for "improper venue."  *Atlantic Marine* established that the determination of whether venue is "wrong" or "improper" for purposes of those statutes is governed by 28 U.S.C. § 1391, and that whether the parties' contract contains a forum-selection clause has no bearing on whether a case satisfies one of Section 1391's categories.  Therefore, a forum-selection clause may not be enforced through Section 1406(a) or Rule 12(b)(3); instead, a motion to

transfer under 28 U.S.C. § 1404(a), which addresses a change of venue "[f]or the convenience of the parties and witnesses, in the interest of justice" is the proper mechanism to be used in evaluating the propriety of a proposed venue transfer when a contract contains a forum-selection clause.[26]  In this case, Rolls-Royce correctly sought transfer under Section 1404(a).

*Atlantic Marine* also articulated the analytical approach that should be used in deciding a Section 1404(a) motion when a forum-selection clause is involved, stating that Section 1404(a) "provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district"[27] and further stating that "a proper application of § 1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases."[28]

The Supreme Court then described the appropriate Section 1404(a) analysis, stating, first, that "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties

---

[26]    *Atlantic Marine Construction Co., Inc. v. United States District Court for the Western District of Texas*, 134 S.Ct. at 575, 577-79.

[27]    *Atlantic Marine Construction Co., Inc. v. United States District Court for the Western District of Texas*, 134 S.Ct. at 579.

[28]    *Atlantic Marine Construction Co., Inc. v. United States District Court for the Western District of Texas*, 134 S.Ct. at 579 (internal quotation omitted).

should a § 1404(a) motion be denied."[29]  The Supreme Court also revised the analysis to be used in evaluating whether transfer should be ordered, stating that the plaintiff's choice of forum carries no weight, no arguments concerning the parties' private interests are permitted, and the original venue's choice-of-law rules are not to be considered.[30]  The court explained that a plaintiff seeking to maintain the litigation in a forum other than that chosen in the forum-selection clause "bears the burden of establishing  that transfer to the  forum for which the parties bargained is unwarranted. . . and the plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed."[31]  The court also stated that the evaluation of public interest factors will rarely defeat a transfer motion, so that "the practical result is that forum-selection clauses should control except in unusual cases."[32]

The Supreme Court based its revised analysis on the parties' expectations as memorialized in their contract, stating:

---

[29]    *Atlantic Marine Construction Co., Inc. v. United States District Court for the Western District of Texas*, 134 S.Ct. at 581.

[30]    *Atlantic Marine Construction Co., Inc. v. United States District Court for the Western District of Texas*, 134 S.Ct. at 581-82.

[31]    *Atlantic Marine Construction Co., Inc. v. United States District Court for the Western District of Texas*, 134 S.Ct. at 581-82.

[32]    *Atlantic Marine Construction Co., Inc. v. United States District Court for the Western District of Texas*, 134 S.Ct. at 582.

When parties have contracted in advance to litigate
disputes in a particular forum, courts should not
unnecessarily disrupt the parties' settled expectations.  A
forum-selection clause, after all, may have figured centrally
in the parties' negotiations and may have affected how they
set monetary and other contractual terms; it may, in fact,
have been a critical factor in their agreement to do business
together in the first place.  In all but the most unusual
cases, therefore, "the interest of justice" is served by
holding parties to their bargain.[33]

In *Atlantic Marine*, the Supreme Court remanded the case for an evaluation of
the public-interest factors that might support denial of the motion to transfer.  Since
that decision was rendered, district courts in the Fifth Circuit have also applied the
new standard but the Fifth Circuit Court of Appeals has not yet addressed this issue.

A review of the cases decided after *Marine Atlantic* is instructive.  *Brown v.
Federated Capital Corp*, No. H-12-2863, 2014 WL 97292 (S.D. Tex., Jan. 6, 2014),
was a two-party case like *Atlantic Marine*, in which the court enforced a forum-
selection clause and transferred the case to the forum chosen in the parties' contract.
Applying *Atlantic Marine*, the court found that the plaintiff had not demonstrated the
type of extraordinary circumstances necessary to preclude transfer.  In *Cline v.
Carnival Corp*., all of the plaintiffs were passengers on a Carnival cruise ship, suing
to recover damages for the alleged unsafe, unsanitary, and unreasonable living

---

[33]     *Atlantic Marine Construction Co., Inc. v. United States District Court for the Western
District of Texas*, 134 S.Ct. at 583.

-21-

conditions that they endured for five days following an engine room fire on Carnival's ship.  Each plaintiff's ticket was a contract including a forum-selection clause.  Finding that the "[p]laintiffs failed to show that the public-interest factors overwhelmingly disfavor transfer,"[34] the court granted Carnival's motion to transfer venue.  Thus, in two-party cases or in cases involving multiple parties in which all are also parties to a contract including a forum-selection clause, *Atlantic Marine* governs.

In *Harland Clarke Holdings Corp. v. Milken,* the court also granted the transfer motion.  Although multiple parties were involved in that suit and not all of them had signed the contract including the forum-selection clause, the court found that all of "the claims arise out of or relate to the agreements and the transactions contemplated thereby, and thus are subject to the broad forum-selections clauses in the Agreements."[35]  The court also found that the plaintiff was bound by the forum-selection clause.[36]  Therefore, *Marine Atlantic* governed.

*GIC Services, LLC v. Freightplus (USA) Inc.* is similar.  There, GIC contracted with Freightplus to ship its tugboat to Nigeria, and Freightplus contracted with IMC

---

[34]    *Cline v. Carnival Corp.*, No. 3:13-CV-1090-B, 2014 WL 550738, *6 (N.D. Tex., Feb. 12, 2014).

[35]    *Harland Clarke Holdings Corp. v. Milken,* No. SA-13-CA-724-XR, 2014 WL 468840, *12 (W.D. Tex., Feb. 4, 2014).

[36]    *Harland Clarke Holdings Corp. v. Milken,* 2014 WL at *16.

to accomplish the task.  Freightplus's bill of lading correctly stated the destination city, but IMC's bill of lading stated an erroneous destination.  When the tugboat was delivered to the wrong location, GIC sued Freightplus in the Southern District of Texas.  Freightplus asserted a third-party demand against IMC.  IMC moved to transfer the case to the Eastern District of Louisiana, based on the forum-selection clause in its bill of lading.  The court concluded that GIC and Freightplus were bound by the forum-selection clause in the IMC's bill of lading and found that it would be in the best interest of justice to transfer the entire case to the forum specified in the bill of lading.[37]  Again, all of the parties to the lawsuit were bound by the contractual forum-selection provision, and the entire action was transferred.

In *Compass Bank v. Palmer*, it was alleged that several loan agreements had been breached.  Two of the notes had forum-selection clauses but the others did not.  The court applied the *Atlantic Marine* analysis to the notes with forum-selection clauses and decided that the claim as to them should be transferred as the defendants requested.  When the court applied the standard Section 1404(a) analysis to the notes without forum-selection clauses, it found that the suit could have been filed originally in the destination forum, that the private-interest factors weighed in favor of transfer,

---

[37]    *GIC Services, LLC v. Freightplus (USA) Inc.*, No. H-13-0567, 2013 WL 6813878, at *4 (S.D. Tex., Dec. 24, 2013)

and that the public-interest factors either weighed in favor of transfer or were neutral. Therefore, as to all of the parties and all of the loans at issue, transfer was appropriate.  Thus, the entire lawsuit was transferred to the destination forum.[38]

All of those cases are different from the instant case in critical respects.  First, in *Atlantic Marine* and also in *Brown,* there were only two parties, both of whom were bound by the forum-selection clause.  In *Cline*, although there were multiple plaintiffs, all of them were parties to contracts containing the forum-selection clause. In *Harland Clark*, *Wells*, and *Compass Bank,* there were multiple parties but also legal bases for finding that the plaintiff who was opposing the transfer was bound by the forum-selection clause just as the defendants in those cases were.  In the instant case, however, the limited warranty containing the forum-selection clause applies only to Rolls-Royce and PHI; it has no applicability or relevance to Apical or Offshore.  Furthermore, none of the cited cases raise the issue of whether a claim should be severed so that a forum-selection clause affecting two of multiple parties could be honored.  Instead, in all of these cases, the motion contemplated a transfer of venue as to the entire case.

---

[38]     *Compass Bank v. Palmer*, No. A-13-CA-831-SS, 2014 WL 355986 (W.D. Tex., Jan. 30, 2014).

Only one reported case decided in the Fifth Circuit after *Atlantic Marine* resulted in severance and transfer.  In *1-Stop Financial Service Centers of America, LLC v. Astonish Results, LLC*, 1–Stop and Astonish entered into a marketing agreement containing a forum-selection clause specifying any state or federal court in Rhode Island.  1–Stop then entered into a separate agreement with Creekridge, which also contained a forum-selection clause but specified that litigation should be had in any state or federal court in Minnesota.  The court applied the *Atlantic Marine* analysis to each contract and found that there was insufficient proof that this was an extraordinary case justifying denial of either motion to transfer.  Creekridge also filed a motion to sever 1-Stop's claim against it.  The court evaluated the factors for severance and concluded as follows:  "Notwithstanding the fact these claims are interrelated and separating them forces two different courts to handle similar cases, this Court cannot override the parties' contractual agreements.  Moreover, any inconvenience or prejudice imposed on 1–Stop, or any other private interest factor, is not [to] be considered in the §1404(a) analysis given *Atlantic Marine*.  1–Stop could have avoided this entire dilemma if it had read and understood the contracts it

signed."[39]   The court severed the claims and transferred each of them to different courts.

That same conclusion cannot be reached in the instant case.  The plaintiff in *1-Stop* entered into two separate contracts, each of which contained a forum-selection clause to which the plaintiff was bound, documenting the plaintiff's expectation, based on the contracts that it entered into, that it could be hailed into court in the two jurisdictions specified in the two contracts.  In the instant case, however, only PHI and Rolls-Royce are bound by the limited warranty.  Apical and Offshore had no part in creating that contract and therefore no expectation that they might be litigating claims in Indiana.  It would not be in the best interest of justice to inconvenience or prejudice Apical and Offshore because of a provision in the contract between PHI and Rolls-Royce.

The undersigned finds that the differences between the cases cited above and this one are significant.  If *Atlantic Marine* was to be read a broadly as Rolls-Royce suggests, then a forum-selection clause would always trump Fed. R. Civ. P. 21 and require both severance and transfer.  This would not further the Supreme Court's stated goal in *Atlantic Marine* of not disrupting the expectations of parties who

---

[39]     *1-Stop Financial Service Centers of America, LLC v. Astonish Results, LLC*, No. A-13-CA-961-SS, 2014 WL 279669, at *10 (W.D. Tex., Jan. 23, 2014).

bargained for litigation in a particular forum but would, instead, potentially inconvenience and prejudice parties having absolutely no relationship to a forum-selection clause that they had no part in confecting.

Another district court case decided after *Atlantic Marine* provides some guidance. In *Stewart v. American Van Lines*, the plaintiff contracted with United Van Lines to move her belongings from Texas to Mississippi. United subcontracted the job to American Van Lines. A dispute arose at the time of delivery, and American placed the plaintiff's property in storage in Florida. The plaintiff sued American in the Eastern District of Texas, and American moved to transfer the case to Florida, as specified in the forum-selection clause in its bill of lading. The court found that the Carmack Amendment, a federal statute, provides that a civil action may be brought against a delivering carrier in any district court of the United States through which the carrier operates.[40] The court explained that, "[i]n matters involving household shipments within the United States. . . Congressional intent as to venue overrides a forum-selection clause."[41] Accordingly, the court found "that the forum-selection clause is unenforceable in actions like this brought under the Carmack

---

[40]    *Stewart v. American Van Lines*, No. 4:12CV394, 2014 WL 243509, at *4 (E.D. Tex., Jan. 21, 2014), citing 49 U.S.C. § 14706(d)(1).

[41]    *Stewart v. American Van Lines*, 2014 WL at 4.

Amendment."[42]  This case stands for the proposition that an otherwise enforceable forum-selection clause is not enforceable when it conflicts with a federal statute creating a specific venue.  The *Stewart* court did not base its ruling on whether the public-interest factors to be relied upon in a Section 1404(a) analysis adjusted as required by *Marine Atlantic* mandate transfer; instead, the *Stewart* court reached its decision based on whether it would be unreasonable to enforce the forum-selection clause under the facts presented.  Thus, the court said, "*Atlantic Marine* does not alter the Court's analysis of venue."[43]  The question was not whether, under *Atlantic Marine*, the case was so extraordinary that the motion to transfer should not be granted but whether, under *Bremen* and *Haynsworth* and the cases that followed them, the factual circumstances rendered the forum-selection clause too unreasonable to be enforced.

In this case, there is no federal statute specifying a particular venue for PHI's claims, but there is a federal statute – Fed. R. Civ. P. 21 – governing the severance of claims.  To adopt Rolls-Royce's position would be to hold that a contractual forum-selection clause is always enforceable even if its enforcement requires a claim arising from the same transaction or occurrence as other claims to be severed and

---

[42]      *Stewart v. American Van Lines*, 2014 WL at 4.

[43]      *Stewart v. American Van Lines*, 2014 WL at 5.

transferred, and even if the transfer will deprive the district court of its discretion to decide whether a claim should be severed and even if severance would result in inconvenience and prejudice to parties to the suit who are not parties to or bound by the contract containing the forum-selection clause.  The undersigned finds that neither *Atlantic Marine* nor any of the cases decided by district courts in the Fifth Circuit after *Atlantic Marine* mandates that conclusion.

Closing the analytical loop, the Court could find that enforcement of the forum-selection clause set forth in Rolls-Royce's limited warranty, *as applied to the facts of this case,* would contravene a strong public policy of the forum state.  Louisiana has a strong public policy favoring the enforcement of its own laws and affording full faith and credit to the laws of other states and the United States.  "The public policy of Louisiana is expressed in its statutes and codes."[44]  Thus, the statutory law of the state reflects its public policies.  People have broad but not unlimited power to contract.  "Persons may not by their juridical acts derogate from laws enacted for the protection of the public interest."[45]  In other words, "[p]arties are free to contract for any object that is lawful, possible, and determined or determinable."[46]  Furthermore,

---

[44]     *Case Atlantic Co. v. Blount Bros. Const., Inc.*, 42,251 (La. App. 2 Cir. 06/20/ 07, 960 So.2d 1274, 1277, *writ denied*, 065 So.2d 403.

[45]     Louisiana Civil Code Article 7.

[46]     Louisiana Civil Code Article 1971.

"[t]he cause of an obligation is unlawful when the enforcement of the obligation would produce a result prohibited by law or against public policy."[47]   Therefore, under Louisiana law, contractual provisions must yield to conflicting statutes. Reading *Atlantic Marine* as broadly as Rolls-Royce would have the Court do would effectively eviscerate Rule 21 any time any party to a lawsuit can produce a contract containing a forum-selection clause.   Instead of the court evaluating the factors recognized by the jurisprudence and applying its discretion to decide whether a claim should be severed, severance would be automatic any time a contract containing a form-selection clause bound any party to the litigation.   Since Louisiana favors legislation over contractual provisions, that result should not be permitted. However, it is not necessary to make that finding to reach the proper result in this case.

Similarly, even without considering *Atlantic Marine*, the forum-selection clause in Rolls-Royce's limited warranty should not be enforced because it would be fundamentally unfair, and therefore unreasonable, to do so because the undersigned's evaluation of the factors relevant to severance demonstrates that severance would result in inconvenience and prejudice to PHI, Apical, and Offshore.   If the forum-

---

[47]      Louisiana Civil Code Article 1968.  See, also, *Agilus Health v. Accor Lodging North America*, 2010-0800 (La. 11/30/10), 52 So.3d 68, 73; *Cadwallader v. Allstate Ins. Co.*, 2002-1637 (La. 6/27/03), 848 So.2d 577, 583; *First National Bank of Commerce v. City of New Orleans*, 555 So.2d 1345, 1348 (La. 1990).

selection clause was enforced, the result would honor the contract between PHI and Rolls-Royce despite the inconvenience and prejudice that could easily be avoided by simply not severing the claim.  Since PHI has not raised that as an issue on whether the forum-selection clause is enforceable as a threshold matter, the Court declines to reach that result.

However, this Court finds that the circumstances of this case are so different from those presented in *Atlantic Marine* that they are sufficiently extraordinary to compel a different result when the analytical structure mandated by *Atlantic Marine* is utilized.  The severance and transfer of PHI's claim against Rolls-Royce would honor the expectations of the parties to the limited warranty but would have an unexpected adverse effect on all of the parties to this suit, particularly Apical and Offshore, who have no relationship to the warranty contract and should not be permitted.

## Conclusion

While the Court concludes that enforcement of the forum-selection clause in Rolls-Royce's limited warranty, under the facts of this case, would be unfair, unjust, and unreasonable based on the facts of this case, the Court finds that the facts of this case are so different from those presented in *Atlantic Marine* that they constitute an exceptional situation justifying denial of Rolls-Royce's motion to transfer.  Finally,

the Court finds that an evaluation of the relevant factors compels denial of Rolls-Royce's motion to sever the claim asserted by PHI against Rolls-Royce from the claims asserted by PHI against the other defendants.  For these reasons, the Court recommends that Rolls-Royce's motion to sever and transfer (Rec. Doc. 106) should be denied.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d

1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana, on March 7th, 2014.

_____

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE